DELIA PERRY, and another,

*vs.*

FRED P. CARLETON, and another.

Lincoln.    Opinion February 4, 1898.

*Waters.    Fish Weirs.    Injunction.    R. S., c. 3, § 63.*

Revised Statutes, c. 3, § 63, applies 1st to weirs or wharves not built in accordance with c. 3, of the Revised Statutes. Second to weirs erected below low water mark, not removed annually. Third to such as are removed annually, when they obstruct navigation or interfere with the rights of others.

The statute gives the landowner the first right to erect a removable weir abreast his land, below low water mark. When he does not exercise the right, others may. He must either do it, or let his neighbors do it.

The defendants had maintained a removable weir abreast the plaintiffs' land several seasons prior to 1896. Early in that year defendants began to construct their weir. Plaintiffs procured an injunction in this cause against their doing so. They immediately removed their weir and have not used the privilege since. Neither does it appear that plaintiffs have done so. *Held;* that it is the actual use and appropriation that gives the landowner the benefit of the statute to protect his right of fishing, not an unexercised right to the use.

Equity applies the extraordinary remedy of injunction only where the cause is clear. *Held;* that this cause is neither clear, nor have the plaintiffs proved any actual or threatened injury to a vested right; and, moreover, the threatened intrusion has long since ceased;— hence there is no ground for equitable relief.

ON REPORT.

Bill in equity, heard on bill, answer and proofs.

The plaintiffs alleged that they are the exclusive owners of a valuable fishing privilege upon the flats at the confluence of the Kennebec and Eastern rivers, in the town of Dresden, which privilege the respondents entered upon in the fishing season of 1896 and used to the exclusion of the plaintiffs and in derogation of their alleged rights and of the rights of their alleged lessee.

The bill prayed for the granting of a temporary injunction, upon the filing of a bond, restraining the respondents from building a weir upon said flats, or in any way, interfering with the complainants' lessee.

The respondent made answer to the bill and defended on two grounds: —

I. That they had built no weir on any flats, whether owned by the complainants, or others, but, on the contrary, they had built their weir for the season of 1896, and for several preceding seasons, entirely below low water mark, as they believed they had a legal right to do. And

II. That their weir was not subject to the restrictive provisions of R. S., c. 3, §§ 60–63, particularly § 63.

From the testimony introduced by the parties it appears that the locus is the peninsula formed by the confluence of the Kennebec and Eastern rivers. The southern end of this peninsula is owned by the plaintiffs, their farm containing about seventy-five acres.

From the lower end of this peninsula, and extending southerly in the Kennebec river, are several hundred acres of flats, the flats being about one and three-quarters miles long and from one-quarter to three-quarters of a mile wide, all of said flats being exposed at low water. On these flats are several valuable shad fisheries, some of which, including the one occupied by these defendants, the plaintiffs and their predecessors in title claim to have used themselves, or leased to others, since 1868.

Beginning with 1893, and in each year since, the respondents have erected a weir on practically the same spot, on the Kennebec side of the peninsula. These weirs are mere temporary structures, being erected about the first of May in each year and used during the months of May and June, and removed immediately after the twenty-fifth of June, because the taking of shad in weirs, after that date, is forbidden by law.

There was evidence tending to show that the plaintiffs had leased this privilege for the season of 1896 to one James A. Robinson, but Robinson had not occupied it, and it was entirely unused when the defendants began the erection of their weir. Robinson, as the alleged lessee of the plaintiffs, forbade the defendants from erecting a weir on this privilege, but showed them no lease, and

neither of the lessors ever intimated to the defendants that they claimed to own, or control this privilege.

*A. M. Spear*, for plaintiffs.

The real question before the court is, have these plaintiffs any rights under the testimony in this case which § 63 of c. 3, R. S., is bound to protect.

It may be claimed that this section of statute does not apply, as they had no rights by common law below low water mark. But it should be observed that sections 2 and 3 of c. 239, laws of 1883, dealt only with rights below, or as construed in *Donnell* v. *Joy*, 85 Maine, 121, beyond low water mark.

Judge VIRGIN in *Donnell* v. *Joy*, p. 120, supra, in discussing the purpose of the legislature says: "In view of such an obvious mischief, and for the purpose of protecting the owner of flats in the full, practicable enjoyment of his proprietary rights, the legislature took the subject matter in hand, and provided, among other things, in substance, that no one of the public should, upon land whether constantly or periodically overflowed by the tides, in which he had no proprietary interest but over which the State had control, plant a weir the natural operation of which would interfere with the rights of the owners of flats. And to make the statute efficient a penalty of $50 for each offense (statute 1885, c. 334) was provided, not, however, in the nature of a qui tam remedy—giving the penalty in part to whomsoever would sue therefor (Bouv. L. D.), —but wholly to the owner as a compensation for the injury to his proprietary rights. Statute 1883, c. 334."

This statute then was to protect " the owner of flats in the full, practicable enjoyment of his proprietary rights," against one having no proprietary interest.

These plaintiffs did not get the full, practical enjoyment of their proprietary rights in this fishing privilege. If let alone they would have received $25. By the interference of these defendants they lost it.

*O. D. Baker and F. L. Staples*, for defendants.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

HASKELL, J.    The contention of the plaintiffs is the sole right to maintain a weir opposite their own land in the waters of the Kennebec, a tidal and navigable river, below the ebb of the tide.

I.    At the bar, plaintiffs' counsel abandoned all claim to the exclusive exercise of such right of fishing under the common law. Although the defendants' brief elaborately argues the question and exhaustively cites authorities applicable to their contention, we have no occasion to discuss it, as the plaintiffs' counsel abandons all claim upon that score.    Our own cases are *Parker* v. *Cutler Milldam Co.*, 20 Maine, 353; *Duncan* v. *Sylvester*, 24 Maine, 482; *Moulton* v. *Libbey*, 37 Maine, 472; *Preble* v. *Brown*, 47 Maine, 284; *Matthews* v. *Treat*, 75 Maine, 594; *Parsons* v. *Clark*, 76 Maine, 476.

II.    Plaintiffs ground their contention upon R. S., c. 3, § 63. That section provides:    "No fish weir, or wharf shall be extended, erected or maintained, except in accordance with this chapter; and no fish weir shall be erected in tide waters below low water mark in front of the shore or flats of another, without the owner's consent, under a penalty of fifty dollars, to be recovered in an action of debt by the owner of said shores or flats; but this chapter does not apply to weirs, the materials of which are chiefly removed annually, provided, that they do not obstruct navigation nor interfere with the rights of others."

This and the two preceding sections consolidated various enactments of existing statutes, and to make clear the meaning of § 63 the legislature, by act of 1885, c. 334, entitled "An act to amend and make clear section 63," inserted the words "or maintain" after "erected" in line three, and the words "for each offense" after "dollars" in line four, and repealed all inconsistent acts, declaring the reading should be as in § 63, with above changes.    This puts at rest all question about the subject to which the statute applies, viz:—

1st.   To weirs or wharves not built in accordance with c. 3, R. S.

2d.   To weirs erected below low water mark not removed annually; and

3d.   To such as are removed annually when they obstruct navigation or interfere with the rights of others.

In the case at bar, defendants' weir did not obstruct navigation, so the question is, did it interfere with plaintiffs' rights? Defendants say no, for fishing is common below low water, and the plaintiffs have no superior right to fish there, and, therefore, no right of theirs has been interfered with. The plaintiffs say, yes, we had located a weir opposite our own land, and you dispossessed us by building a weir there before we had completed our own. The statute forbids the location of a weir in front of the land of another without his consent, and in awkward phrase, declares itself applicable to removable weirs, if they interfere with the rights of others. Defendants' weir was a removable weir. How did it interfere with plaintiffs' rights? They had no exclusive right of fishing there, but they had a right to build a weir there and then defendants could not invade it. When plaintiffs once appropriated the privilege of building their weir, then neither defendants nor any one else could lawfully dispossess them, any more than they could require them to remove a boat from a place where they were fishing so as to enjoy it themselves. The statute means to give the landowner the first right to erect a removable weir abreast his land. When he does not wish to exercise such right, then, any other person may. He must either use it, or let his neighbor do it.

Were the plaintiffs using this privilege? The evidence shows they were not, unless driving a stake in the river as a mark amounted to such use. The plaintiffs claim in their bill the exclusive right of fishing abreast their land. One of the plaintiffs testifies: "There is a fishing privilege opposite my flats, and we used to consider it a good one. Just before they [defendants] occupied it with their weirs I had leased it to Mr. Robinson here for the fishing season of '96. These defendants occupied the priv-

ilege which I had leased to Mr. Robinson. They did not ask my consent and I never gave it. I protested against their doing it. . . . . I told Mr. Robinson when I leased it to him to say to the defendants that he intended to occupy it, or to do the same as if it was his own."

It appears that defendants had occupied this privilege for three or four years, and that, when they came to build their weir in the spring, they saw a stake near where they intended to build. Robinson testifies: "I went to stick my stake there, I should judge about nine or ten feet from where they started theirs. . . . . After that stake was stuck I saw both the defendants together at the privilege, and I asked them if they were going to build there and they said they were. I says, I have leased this privilege of Mrs. Perry and intend to build myself, and of course we had more or less talk. I can't remember all. I says, I will see whether you will or not."

A preliminary injunction was granted in this cause, and the defendants immediately removed their weir, and there is no evidence that Robinson or any one else occupied the privilege after that.

The plaintiffs had claimed the exclusive right of fishing in the river below the ebb of the tide opposite their flats for many years; not because they were actually using the privilege themselves, but because the right was their property. And we do not feel sure that the claim now set up was made because Robinson actually had marked the spot and intended to appropriate it by building a weir that spring, but only intended to assert the plaintiffs' claim of exclusive right to do so. The defendants had used the privilege for three or four years, and when they begun to build in the spring of '96 they were forbidden to do so by Robinson for plaintiffs, and were immediately enjoined in this suit on bill dated May 7th. They immediately removed their weir and have not used the privilege since. This cause was finally heard in about a year, May 4, 1897. There is no evidence that Robinson or plaintiffs have since used the privilege, and there is a very strong inference that they never intended so to do. It is the actual use and appropriation

that gives the landowner the benefit of the statute to protect his right of fishing, not an unexercised right to do so. Equity applies the extraordinary remedy of injunction only where the cause is clear. This cause is neither clear, nor have the plaintiffs shown any actual or threatened injury to a vested right; and, moreover, the threatened intrusion has been long since abandoned. · There is no equitable ground for relief.

*Bill dismissed with costs.*